DETERMINED IN THE

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## April, 1891.

CHARLES M. TITUS, RESPONDENT, *v.* CHARLES F. POOLE AND OTHERS, AS EXECUTORS OF EDWARD V. POOLE, DECEASED, APPELLANTS.

*Executors and administrators — rejected claim — right within one year to bring a second action thereon, after a nonsuit — the six months' limitation does not apply in such a case — Code of Civil Procedure, secs. 1822, 405.*

A claim against a decedent's estate was presented to his executors and was rejected. The claimants then brought an action thereon in the Supreme Court alleging fraud, but were nonsuited. They subsequently presented a second claim, and upon its rejection began, after the expiration of six months from the presentation of the claim, and within one year from the granting of said nonsuit, a second action upon such claim, based on contract.

*Held,* that the six months' limitation, prescribed by section 1822 of the Code of Civil Procedure, within which an action must be brought upon a rejected claim, did not apply to the second action.

That such action came within the scope of section 405 of the Code of Civil Procedure, providing that if an "action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits," the plaintiff may bring a new action within one year after the termination of the former action.

APPEAL by the defendants, Charles F. Poole, Susan Poole and Thomas B. Campbell, as executors of the last will and testament of Edward V. Poole, deceased, from a judgment, entered in the office of the clerk of the county of Tompkins on the 17th day of March,

1890, after a trial at the Tompkins Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $6,922.67; and also from an order, entered in said clerk's office on the 15th day of December, 1890, denying defendants' motion for a new trial.

Edward V. Poole died on the 1st day of October, 1887, and on the 12th of October, 1887, his will was admitted to probate by the surrogate of Tioga county, and the defendants were appointed executors. In the complaint in this action, which was commenced December 26, 1888, it is alleged that on the 9th day of February, 1883, the plaintiff sold and conveyed to defendants' testator certain real estate situated in the city of Ithaca at the agreed price of $9,000, "and accepted and received an assignment of what purported to be fifty shares of one hundred dollars each of the stock of an alleged bank called 'The Home Savings Bank of South Waverly,' alleged to have been organized under an act of the legislature of the State of Pennsylvania, as full payment of five thousand dollars balance due plaintiff on such purchase-price, and that plaintiff received, and agreed to receive, said alleged stock by reason of and relying on the warranty, express and implied, and on the statements and representations hereinafter set forth." The complaint sets out a copy of the certificate; indorsed on which was a power of attorney to transfer the fifty shares of the capital stock of the Home Savings Bank of South Waverly, standing in the name of the testator on the books of the said company, which was executed by the testator on the 9th day of February, 1883. It is alleged that the stock certificate "was printed and engraved in the common form and on paper usually used in script representing bank stock," and further that the testator "by express words and by implication warranted and represented that said script or alleged certificate of stock so transferred was, in all respects, what it purported to be on its face, and that all the statements and representations printed and written on it were true; and said testator further stated, represented and warranted that it was a regular dividend-paying stock; that it was a State bank regularly organized under the laws of the State of Pennsylvania; that it was all right in every particular. * * * Whereas, in truth and fact, said script or alleged certificate of stock was not, in any respect, what it purported

on its face to be. It was not regular bank stock. It was not organized under an act of the legislature of the State of Pennsylvania, and was not a State bank regularly organized under laws of Pennsylvania. * * * None of the statements and representations written or printed upon said script were true, and it was utterly worthless for any purpose whatever. It was not in any respect what plaintiff agreed to receive as payment of said $5,000, and the transfer to him of the above-described piece of paper did not operate, in whole or in part, as a payment of the said balance, which has never been paid by defendants or their testator, and the same is still due and owing this plaintiff, together with interest from the 10th day of February, 1883." It is also alleged in the complaint " That said demand and claim was in writing and was presented on or about the 29th day of November, 1888, and contained substantially the facts set forth in this complaint." It is alleged that the executors refused to pay, and that the plaintiff offered to refer, and that the defendants neglected and refused to refer the claim.

In the answer the defendants allege that the claim was presented on the 7th of May, 1888, and was by them rejected; and they allege "that the claim so presented May 7, 1888, arose out of, and was founded upon, the same transaction substantially set forth in the complaint in this action. That these defendants, on or about June 12, 1888, disputed and rejected the aforesaid claim which the plaintiff presented to the defendants May 7, 1888." They then set up that the action was not brought within six months after the claim was so rejected, and that it was barred by the short statute of six months, according to the language of section 1822 of the Code of Civil Procedure. The answer of the defendants further alleged that on the 28th of June, 1888, an action was brought in this court claiming to recover $5,000, balance of the purchase-money for the real estate, by reason of alleged infirmities in the stock transferred in payment therefor; that the complaint in that action alleged that the testator, at the time of the transfer, intended to " deceive and defraud the plaintiff in the transaction in question; " that the issues in that action were brought to trial at a Circuit Court on the 31st of October, 1888, and that the plaintiff was nonsuited, as there was a failure to prove that the testator "knew the representations made by him were false; " that thereafter a fresh claim was presented to

the executors and rejected ; and on the 26th day of December, 1888, this action was commenced on contract only for the unpaid balance of purchase-money, containing no allegations of fraudulent representation or intent.

While the plaintiff held the stock he received a dividend thereon of $150. The verdict of the jury was for $6,922.67, being for $5,000 and the interest thereon from the 9th day of February, 1883, less the $150 which had been received by the plaintiff on the 10th day of February, 1884, with interest thereon from that date.

*David M. Dean,* for the appellants.

*Frank E. Tibbitts* and *S. D. Halliday,* for the respondent.

HARDIN, P. J. :

Appellants insist that the short statute of limitations, found in section 1822 of the Code, applies and bars the right of action, because this suit was not commenced within six months from the rejection of the first claim presented. In *Hoyt* v. *Bonnett* (50 N. Y., 538), it was held that the short statute of limitations (2 R. S., 89, § 38) was penal in its character and should be strictly construed. Respondent maintains that as the first action was terminated by a nonsuit he was entitled to " commence a new action for the same cause, after the expiration of the time so limited," by the provisions of section 1822 of the Code, provided the new action be brought " within one year after such reversal or termination " by the nonsuit mentioned. (§ 405.) Apparently the first action was brought by reason of the supposed misrepresentations, statements and assertions alleged to have been made by the testator. In the complaint in that action it was asserted that the testator knew that the representations made by him were false. In the present complaint no such allegation is contained. The gravamen of the first action was a failure of the plaintiff to receive and realize satisfaction for his real estate from and out of the balance of the stock transferred to him ; and the gist of the second action seems to be the same, or, in the language of section 405, it may be said the plaintiff has brought " a new action for the same cause," and as it was brought within one year from the nonsuit, it seems to be saved by section 405 of the Code of Civil Procedure. Our attention has been called to *Hill* v. *Board of*

*Supervisors of Rensselaer County* (119 N. Y., 344); that was an action against the county under a statute creating liability for the acts of a mob, provided the action was brought within three months, and it was held that as the action was under a special law it was only maintainable by its authority; that the limitation was so incorporated with the remedy given as to make it an integral part of it, and was a condition precedent to the maintenance of the action at all, and, therefore, section 405 of the Code did not apply. We think the case does not aid the appellants. It may be observed, in passing, that if it could be successfully maintained that the claim first presented, and upon which the first appeal was brought, was essentially different from the second claim presented and rejected, it might be said with force that this action was brought within the six months next following the rejection of the second claim, and it was not barred by the provisions of section 1822 of the Code of Civil Procedure. However, we prefer to uphold the plaintiff's right to escape the force of section 1822 by resting the same upon the provisions of section 405 of the Code of Civil Procedure.

After a careful perusal of the evidence found in the appeal-book we are of the opinion that the testator acted in good faith and without any intent to defraud the plaintiff when he transferred to him the shares represented by the certificate which he held, and which are mentioned in the complaint. Such seems to be the opinion and ruling of the trial judge. Near the close of the case he observed : " Now, as I understand it, in this action there is no claim here that Mr. Poole made these representations in bad faith, or that that question is here at all." Again, he observed : " I have no doubt but that Mr. Poole acted in good faith." The defendants' counsel took the position that, under the evidence in the case, " the question as to whether there is a warranty is a question of law in this case." Thereupon the court ruled, viz.: " I rule and hold it is a question of fact for the jury upon the whole of the evidence." To that ruling the defendants took an exception. The case seems to have been submitted to the jury upon the theory that it was for them to find whether there was a warranty, and if so, whether there was a breach, and if so, to ascertain the damages sustained by reason of the breach; and the defendants' counsel took an exception to that portion of the charge " which, in

substance, submits to the jury to say whether the stock had any value at all, or represented anything at all;" and thereafter he took the position by way of a request, as we understand the appeal-book: "That the rule of damages in this case is the difference in the value between the stock as warranted and its actual value in the market at the time of the trade," and the court so charged, adding this expression: "That is what I charge if it had any value at all;" thereupon the defendants' counsel observed, viz.: "Well, we except to that portion that leaves to them again whether it has any value at all;" thereupon the court observed: "I have left it for the jury to say whether it had any value;" thereupon the defendants' counsel asked the court to charge: "That the measure of damages is the market-price of the stock about the time, or soon after the purchase," to which the court responded: "That is so, if they find it had any market-value;" thereupon the defendants' counsel observed: "And that the market-price at the time, or soon after the purchase, is strong evidence of its value;" to this request the court responded: "That is so, I charge that, with this qualification, that if the price was based upon the fact that the persons who were dealing in it believed that it was a corporation, that fact would affect it, but if they were ignorant of the fact it was a corporation that would be a different thing;" thereupon the defendants' counsel excepted to the qualification. The defendants' counsel then observed: "That such market-price will control unless the real pecuniary condition of the bank is shown;" to which the court responded: "That would be so within the rules I have laid down;" thereupon the defendants' counsel requested the court to charge: "That the burden of proving the real pecuniary condition of the bank is upon the plaintiff;" to which the court responded: "In that form I decline to charge it; it is true the burden of proof is on the plaintiff to show that this stock was of less value than its face, or of no value at all — that is probably what you mean;" thereupon the defendants' counsel took an exception to the refusal to charge as requested. From the quotations already made, as well as from other expressions found in the charge, it may be assumed that the trial judge intended to instruct the jury that the rule of damages applicable was the difference in the value of the stock as represented and the actual value of it at the time the sale was made in February, 1883. Witnesses were called in

behalf of the defendant, who testified that sales were made subsequent to the transfer to the plaintiff at par. Dr. Cady testified that he knew of its being bought and sold in August, 1886, at par, and from the time the bank was organized down to the time of the sale made by him that the value of the stock was par, and that the market-value of it from 1873 to 1887 was par; and the witness Brooks testified that he knew the bank from the time it was organized, in 1873, until it closed, and that during that time the stock had a market-value; and in answer to the question as to what was it worth, he says one hundred cents on a dollar; I bought some of it, and sold some of it, and investigated as to its value. The witness Clark testified that he knew the Home Savings Bank from 1873 up to the time it closed its doors, and in speaking of the stock he added: "I should say its market-value on the 1st of February, 1883, was from eighty-five cents to a dollar on a dollar." Besides the evidence given by the opinion of witnesses as to the value of the stock, it appeared in evidence that the bank was in operation from 1873 to 1887, and during that time it was a bank of deposit and discount; and a witness was called who testified as to the assets possessed by the bank in 1883. Considerable evidence was delivered, also indirectly bearing upon the question of the actual condition of the bank, as to the assets which it possessed in 1883, and the statement of February 3, 1883, showing the assets to be $226,174.88. William Kirby, who was the bookkeeper in the bank from March, 1881, until the time it closed in 1887, testified that he was familiar with the books and its assets in February, 1883; and he says that the value of the assets at the close of the business on the 9th of February, 1883, "was $171,000, and something over. * * * It would make the assets about equal to the liabilities, including the capital slock." If the stock, at the time of the transfer in February, 1883, was worth par, or if the share in the assets represented by the certificate was worth $5,000, it is difficult to see how the plaintiff sustained damages in the sum of $5,000 by reason of a breach of any warranty shown to have been given by the testator to the plaintiff. It was incumbent on the plaintiff to show the value of the stock, if as represented, and its actual value as it was. The plaintiff furnished no satisfactory evidence to indicate that the difference between the value of the stock as it was, if as represented,

and the value of the stock as it actually was, was equal to one hundred cents on the dollar; we are, therefore, inclined to think the verdict is not in accordance with the evidence, and that the jury did not follow the rule laid down by the trial judge upon that subject. Undoubtedly the plaintiff, when he took the certificate for the shares, became in equity the owner of a proportionate share of the assets of the institution. If, when he thus acquired an ownership in the institution, capitalized at $100,000, his one-twentieth share thereof was worth $5,000 at the time he received the certificate, it is difficult to see how he sustained $5,000 damage by reason of the breach of any representations shown to have been made by the testator. It does not follow that the plaintiff's damages are $5,000 from the fact that the institution failed in 1887, four years after he acquired an ownership therein. It seems he used the certificate, and by means of it he borrowed $4,500 from the institution, pledging the certificate as security for the loan to that amount made to him by the institution. We think the verdict is not in accordance with the evidence, nor the charge of the learned trial judge, as we understand it.

The judgment and order must be reversed and a new trial ordered, with costs to abide the event.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.